## ELLISON *vs.* PECARE and others.

Where, subsequent to the execution of a mortgage, the premises covered by the mortgage are sold by the mortgagor, in separate parcels, to different purchasers, who have no notice of the mortgage, one of whom takes a conveyance executed and delivered prior to the giving of the deed to the other, while the latter conveyance is first recorded; in an action to foreclose the mortgage, the purchaser whose deed is first *executed* and delivered takes precedence over him whose deed is first *recorded;* and he has the prior equity, in respect to the order in which the several parcels shall be sold.

APPEAL from a judgment entered at a special term, for the foreclosure of a mortgage and sale of the mortgaged premises. The question was as to the order in which the several parcels of land, which had been sold and conveyed, by the mortgagor, to different purchasers, at different times, should be sold, under the judgment of foreclosure. The special term decided that Hesser, the purchaser whose deed was first recorded, had the prior equity, as against Pecare, whose deed was first executed and delivered.

*By the Court,* PRATT, J. This is an action to foreclose a mortgage upon premises sold in separate parcels to different purchasers, subsequent to the execution of the mortgage. The question now in litigation arises between the defendants Pecare and Hesser, claiming under different deeds of conveyance,

in regard to the order in which the different parcels of the mortgaged premises shall be sold. The conveyance under which Pecare claims was first, in the order of time, executed and delivered, while Hesser's deed was first put upon record. Both defendants aver in their answer that they had no knowledge of the mortgage at the time of their purchase, and both conveyances contained full covenants of warranty. The court at special term adjudged that Hesser, who had his deed first recorded, had the prior equity.

It is a well acknowledged principle of equity, that the first purchaser of a portion of premises subject to a prior mortgage, is entitled to have the remainder of the premises sold first to satisfy the mortgage. But this is a mere equity, and is not an interest in lands which is subject to the provisions of the recording act. The recording act, *ex proprio vigore*, cannot affect such a case. It is possible that, through the actual notice which a person might receive by means of the record of a deed or mortgage, his equity might be lost, but nothing of that kind is claimed in this case.

In this case, the party under whom Pecare holds, was by his purchase invested with an equity to have the holder of the mortgage, in the first place, exhaust his remedy against the unsold portions of the lot before resorting to that conveyed to him. Now, how has he been divested of such equity? He lost nothing by the mere fact of not having his deed recorded, for the statute does not apply to an interest of this kind. If he has lost it at all, it must be in consequence of some actual equity with which some one else has become invested, superior to his. But Hesser avows in his answer that he did not know of the mortgage, at the time of the purchase. If that be so, it would have made no difference with him if Pecare's deed had been on record. I am therefore utterly unable to perceive how he has any equity superior to Pecare's, and the latter, being prior in point of time, takes precedence. It is not necessary to decide what would have been the result if Hesser had known of the mortgage, and had consequently

examined the record to see if any other portion of the premises had been sold, and finding no record of any other conveyance, had been induced to buy, supposing in good faith that he was the first purchaser. In such case there would have been some show of equity; whether superior to that of Pecare or not, it is not necessary to declare. In this case, there is no pretense of his being misled by the want of this record, or that his condition is in anywise different from what it would be if the deed had been recorded.

The judgment should therefore be modified in accordance with the finding of the referee, with costs, to be paid by Hesser.

[New York General Term, May 2, 1859. *Roosevelt, Ingraham* and *Pratt*, Justices.]

————•◦•————

The Reformed Protestant Dutch Church of Westfield, Staten Island, *vs.* Susan D. Brown, Executrix, &c.

Where a subscription paper for the erection of a church edifice, containing certain conditions, was signed by B., who, during the erection of the building repeatedly told those in charge of the work to go on and finish the edifice, and he would pay his subscription; *Held* that this was a sufficient waiver of the conditions in the subscription; and that the fact that the society, on the faith of these promises, and similar promises from others, went on and finished the edifice, constituted a sufficient consideration to sustain the promises.

A promise, made for the benefit of a society thereafter to be incorporated, but before it is *in esse*, is valid and binding; and upon the subsequent incorporation of the society it can maintain an action upon the promise; especially where a portion of the work constituting the consideration is done subsequent to the incorporation.

APPEAL by the defendant, from a judgment entered upon the report of a referee. The action was brought against the defendant as executrix of David Brown, deceased, to recover $500 upon a subscription by the testator for the erection of the church edifice of the plaintiffs; also $100 subscribed